BRIGGS H. NAPIER and ELIZABETH J. NAPIER, plaintiffs in error, *vs.* ELIJAH E. JONES, defendant in error.

1. If, in a suit against a guardian, by his ward and her husband, for wasting the ward's estate, long and complicated accounts, running through a series of years, are submitted to the jury without having been referred to an auditor, and the Judge charges the jury correctly as to the liability of the guardian for mixing his ward's funds with his own, but the record does not show that the Court was requested to instruct them, or that he did instruct them, as to the rules by which they were to be guided in making their calculations as to the proper credits to be allowed the guardian in his disbursements, the items of which are not specifically surcharged and falsified, and they return a verdict in favor of complainants for a round sum, not indicating the process by which they arrived at the result, this Court will not undertake to say, at the instance of the complainants, that the verdict is contrary to evidence, and the principles of justice and equity, or to the charge of the Court. Nor will the Court grant a new trial on the ground that the verdict is contrary to law, where no such assignment of error appears in the record.

2. Where such accounts are so submitted to the jury, and the accounts run through the entire period of the war, involving the receipt and payment of large sums of Confederate money by the guardian, the jury will be allowed a liberal discretion in adjusting the equities between the parties, under the Ordinance of 1865, and this Court will not scan too critically the result at which they arrive, no bad faith appearing on the part of the guardian.

3. The law allowing compound interest to be charged against trustees after six years, and annually thereafter, in certain specified cases, was suspended during the war by Act of December 6th, 1862, which takes precedence of the Code by Act of December 13th, 1862.

4. The returns of a guardian, made in good faith, are only *prima facie* evidence against him, and may be explained by parol evidence. In the charge upon this point the Court erred, but it was in favor of complainants.

5. The remaining errors complained of, conceding them to be errors, were immaterial, and could not have influenced the verdict.

Guardian and ward.  Assignment of error.  Ordinance of 1865.  Compounding interest.  Before Judge ROBINSON. Morgan Superior Court.  March Term, 1871.

Plaintiffs in error filed their bill against defendant in error and charged that Elizabeth J. Napier, the wife of Briggs H. Napier, is the grand-daughter of defendant in error, and also of one Elias Reid, formerly of the city of Savannah; that Elias Reid died in the year 1854, leaving a large estate, one-half of which was bequeathed to said Elizabeth J. Napier and her brother and sister; that during the same year defendant in error was appointed guardian of his said three grandchildren, and possessed himself of one-half of the estate of said Elias Reid, deceased, amounting in value to about $70,000; that defendant in error used and employed the means held by him as guardian in speculations for his own benefit, and especially in the purchase of a plantation for himself in the county of Bartow, known as Stilesborough; that Elizabeth J. Napier resided with the defendant in error most of the time from his appointment as guardian to the occasion of her marriage, in April, 1865; that during the years 1862, 1863, 1864 and 1865, defendant in error claims to have paid out for his said ward the sum of $8,020.73; whereas, plaintiffs in error stand ready to prove that less than $800 in currency, equal to that received by defendant in error, would have paid for more than the said Elizabeth J. obtained during the last named years; that during the spring of 1865, or the previous winter, defendant in error handed to the said Elizabeth J. Confederate Treasury notes to the amount of some $4,000, stating that it was her money, and urged her to go to the city of Augusta and purchase clothing; that subsequently he advised her against attempting this trip on account of the movements of General Sherman; that these notes remained in her possession until they were utterly

Napier and wife *vs.* Jones.

worthless; that defendant in error claims a credit for the amount of said notes. The bill contained many similar additional charges, which it is not necessary to set forth. The prayer was that the payments in Confederate money might be set aside; that a pretended settlement, fraudulently obtained by defendant in error with plaintiffs in error, be decreed null and void; that a full and fair account be had. To this bill was attached a long and complicated account between the defendant in error and his wards, commencing in 1854 and running through a series of years to October, 1865. The answer of defendant in error denied all the charges of fraud, and gave a history of his acts as guardian; set up the actual necessity of receiving Confederate money during the war, etc. The case was submitted to a jury without any previous reference to an auditor.

The jury returned a verdict for plaintiffs in error for the sum of $2,000. A motion was made on behalf of plaintiffs in error for a new trial, which was overruled by the Court, and they excepted upon the following, among other grounds, to-wit:

1st. Because the Court erred in refusing to grant a new trial on the ground that the verdict was for a much smaller sum than the evidence showed to be due.

2d. Because the Court erred in refusing to grant a new trial on the ground that the Court erred in allowing the defendant to give in evidence his conduct in reference to the negroes, Mary and her child, Levenia, after their sale by him as guardian.

3d. Because the Court erred in refusing to grant a new trial on the ground that the verdict was contrary to the charge of the Court, such parts of said charge as is material being in substance as follows, to-wit: That a return made to the Court of Ordinary, by the defendant, as guardian, charging himself with the proceeds arising from the sale of negro property, as of the first of January, 1860, is binding, unless he be relieved therefrom by the judgment of some

Court having competent jurisdiction of the matter; that where the defendant received the ward's money, and mixed it with his own, and used it for his own purposes, he is liable for the amount so received, with interest thereon, at the value of the money at the time of its reception.

A. G. & F. C. Foster, for plaintiffs in error, cited 2 Story's Eq. Ju., 1273, 1273(a) and 1274; Hill on Trustees, 579, 611, 612, 613; 38 Ga. R., 311; 39 *Ibid.*, 101; 24 *Ibid.*, 578; Code, sec. 2562; 29 Ga. R., 102; 11 *Ibid.*, 258; Code, secs. 3700, 3703, 3704.

Reese & Reese, for defendant, cited: Compounding suspended by Act of March 6th, 1862: Pamphlet, Nov. and Dec., 1862, and March and April, 1863, p. 30. Power of trustee to receive Confederate money and liability: Acts of 1862 and 1863, p. 143; Acts of 1863 and 1864, p. 29; Acts of 1865 and 1866, p. 88; 4th section of Relief Act of 1868. Rule of conduct of trustees: 38 Ga. R., 304; 39 *Ibid.*, 96; 41 *Ibid.*, 439; 42 *Ibid.*, 135.

Montgomery, Judge.

This case was an attempt by the plaintiffs in error to hold the defendant in error liable as guardian of the wife of Napier for mismanagement of his ward's estate.

1. The guardian's accounts were long and complicated, running through a series of years, embracing the whole period of the war. The waste charged was that he had mixed his ward's funds with his own; that he had credited himself with Confederate money paid during the war, to make the credit side of his account balance the debt side, for which he was liable in gold; that he sold a couple of negroes for $1,500, for one-third of which he was liable to complainant's wife, and had failed to account for them, and that after the war he had turned over to complainants between $4,000 and $5,000 in Confederate notes and securities to balance his ac-

counts as guardian, it appearing from his books that there were that many dollars due by him to the ward. The evidence being that his ward's funds had run into that kind of currency during the war. It appeared from the evidence that he had sold the negroes at private sale, on credit, and the purchaser being unable to pay for them, he had taken them back, and they were lost by emancipation.

The case was submitted to the jury without the accounts ever having been referred to an auditor, and without instructions asked for, or given to the jury, as to what rules they were to be guided by in allowing the disbursements of the guardian, none of the items of which were specifically surcharged and falsified. The Court charged the jury correctly as to the liability of the guardian for mixing the funds of his ward with his own, and the jury returned a verdict for $2,000 for complainants, not indicating by what process they arrived at this result. Complainants moved for a new trial, because the verdict was for too small an amount, on various grounds, among them because the verdict was contrary to the evidence and the principles of justice and equity, and the charge of the Court. There was no allegation that the verdict was contrary to law, though there was much argument by counsel going to show that the verdict was contrary to law, in that "defendant never having made any investments of his ward's money, he is liable for the amounts received by him as guardian, with interest upon the same from the time of its reception, at whatever the money was worth at the time he received it, deducting the legitimate disbursements made by him." And counsel presented a calculation purporting to show how the jury should have arrived at a verdict for a much larger amount. It is only necessary to notice a single error in the calculations of counsel to show that if the jury have made any errors, they might have fallen into graver ones had they adopted those calculations. Counsel for complainants charge the defendant with having received in gold, on July 1st, 1856, the sum of $12,000. The proof shows

Napier and wife *vs.* Jones.

that he then received a bond of one Scarlet, on which that amount was running to maturity, and that he afterwards received in payment on said bond $4,200 in Confederate money. This Court has frequently decided that if received when ordinarily prudent men took the money in their business transactions, he could not be held liable for its depreciation or loss.

There was no evidence submitted to the jury as to the value of Confederate money at the various dates of the disbursements by the guardian. In view of the manner in which the whole case was thus left to the jury, without chart or compass to guide them through this labarynth of accounts running through a series of years, with the currency ever fluctuating and varying, this Court will not undertake to say that their finding was contrary to the evidence or the principles of justice and equity, or the charge of the Court. Nor will the Court grant a new trial on the ground that the verdict is contrary to law, no such assignment of error appearing in the record.

2. And, under the facts stated, the jury will be allowed a liberal discretion in adjusting the equities between the parties, as provided for by the Ordinance of 1865 ; nor will the Court scan too critically the result at which they arrive, no bad faith appearing on the part of the guardian.

3. Counsel for complainants also insisted that the jury should have charged the guardian with compound interest after six years, and annually thereafter. Here the rule of adjustment insisted on by the counsel would again have led the jury into error, as the law authorizing such a charge was suspended during the war by Act of December 6th, 1862, which took precedence of the Code by Act of December 13th, 1862.

4. Counsel for complainants again say, and so charge in their calculation, that the complainants were entitled to $500 in gold for their share of the negroes sold, and interest thereon from January 1st, 1860, and contend that the guardian's return to the Ordinary was conclusive against him as to this

sale of the negroes.   We think not.   The returns of a guar-
dian, made in good faith, (and there is no evidence of bad
faith here) are only *prima facie* evidence against him, and
may be explained by parol evidence.   In the charge upon
this point the Court erred, but in favor of complaints.

5. The remaining errors complained of, conceding them to
be such, are immaterial, and could not have influenced the
verdict.

Judgment affirmed.